Case No. 16-5037. Eric O. Autor et al. Appellant v. Penny Sue Pritzker and her official capacity as Secretary of Commerce et al. Ms. Brantley Webb for the appellants, Ms. Foster for the appellees. Good morning. May it please the Court? Appellants and the government agree here that the rule in this circuit is that a party may prevail within the meaning of the Equal Access to Justice Act where this Court issues a remand order on terms such that a substantive victory will obviously follow. Plaintiffs submit that that is what happened in this case. In this Court's opinion in Initiative Referendum Institute v. U.S. Postal Service, this Court held that the remand rule encompasses more than just a ministerial remand, but is a practical rule that looks at the reality of what the Initiative Referendum Institute was materially identical to this case in the relevant respects. In that case, there was more to be done after this Court remanded, but the government changed its rule and mooted the case. When plaintiffs sought fees, the government argued there that it could have prevailed had the litigation continued. But on examination, this Court judged that the government could not have prevailed under any of its various theories, and thus plaintiff's victory was inevitable. Thus, under the IRI case... Taking the allegations in the complaint as true. Pardon, Your Honor? In the first appeal. Yes. Yes, this Court did take those allegations as true. But we submit that there were no more questions of fact to be resolved after the remand. Well, I thought we told the district court to establish the facts on the Pickering claim. Well, the government could have submitted more arguments for the justifications that had already been placed into the record. But those justifications for the policy were already there. They were to reduce special interests on advisory committees. And this Court recognized, and we submit that it was simply impossible for the government to prevail under the standard this Court set forth in Autor. So your strongest argument would be that no matter what evidence the government might offer to challenge what was alleged, it could no longer prevail because the defenses it offered had been rejected by this Court? Yes, Your Honor. Simply that under the standard, under the NTEU, the National Treasury Employees Union standard, which requires the government to show that the blanket ban on First Amendment activity was necessary to the efficacy and actual operations of the ITECs, and that that outweighed the lobbyists' First Amendment interests. Because the only justification that the government had, and under the strict NTEU test, the government can't make up new justifications. The justifications have to be the actual purposes, the purpose behind the law. And here, the purpose was to reduce special interests on advisory committees. So, with respect, because ITECs specifically exist to reflect special interests, the views of special interests in formulating trade policy, it was simply illogical for the government to try to put forward a justification for the law to reduce special interests. Why? Well, I don't understand. Are you saying this was a ministerial remand, and if you are, we said, we leave the Pickering issue open. I mean, that's not ministerial. We're not saying it hasn't been briefed. We leave it open. Right. We're not saying that it was a ministerial remand, and we submit that in the IRI versus Postal Service case, the Court recognized that the remand terms rule encompasses more than just ministerial remands, which is simply to sort of enter judgment that the Postal Service case, the government had a number of options on remand, and it essentially, excuse me, it changed the regulation, and then argued that that was voluntary because it could have taken other paths and prevailed on remand. And this Court rejected that, because it examined the sort of possibilities of what the government could have done, and found that the only option that the government, the legal reality was, the only option that the government had was to amend the regulation. And we see that here, the legal reality of this was that the government could not possibly justify the lobbyist ban with respect to ITACs under the actual purposes of the law. No matter what evidence they might have put forth? Well, Your Honor, we submit that any evidence they would have would be irrelevant or illogical, because they still had to justify the ban. Suppose they offered reams of evidence of how much the U.S. Treasury has lost because of all of this corruption and fraud and graft, because of conflicts of interest. Well, we think that... All I'm trying to understand is this Court, in the first appeal, didn't decide those issues, did it? It simply said two of the defenses the government has offered. Correct, but... In that sense, I thought your argument was going to be that you obtained significant victory. But you want to go the step further and say your victory was inevitable. Well, we submit both, Your Honor. We think we obtained significant victory last time in front of this Court, and we think that the terms of the Court's remand made our victory inevitable. And I would just submit that if the government had put in reams of evidence of the problems of special interests in government, that still wouldn't address the tailoring prong of the NTU test, which requires the government to show that the restriction is necessary to the actual operation, the efficacy of the ITECs, when here, as I said, the ITECs specifically, they're unusual for committees in government. I understand that, but you're just saying, as I understood your argument now, is that no matter what evidence the government put in, even if precisely tailored, you would still win. Well, we submit that it couldn't, that factual evidence supporting its desire to reduce special interests in government simply would not help support its justification here because it wouldn't be tailored to what the ban actually did here. And any other sort of evidence that the government would have put in about, say, the reasons for distinguishing between corporate employees and a corporation's in-house lobbyists, which are also employees, could only be drawn in a way that would simply, essentially ban certain persons for petitioning the government more than others or simply ban lobbyists because government doesn't like lobbyists. And those sorts of reasons would be suspect and, you know, as with the... So what this court should have done in the first appeal was to reverse and remand with instructions to enter a judgment plenum? Well, I think the court could have done that. But it didn't? It didn't do that, but it didn't have to. In postal service, it went so far as it did here and then said we don't need to go any further on appeal. So we remanded to the district court. It preserved the ordinary function of the district court to go first in our system. And we think that's what happened here. But as in postal service here, the result at that point was preordained and inevitable. I would also submit that the government doesn't dispute that it was this court's opinion that did cause it to rescind the ban. And I would just flag for the court the very problematic outcome of a ruling for the government here, which will essentially force plaintiffs to continue litigating to the very bitter end and issue settlement negotiations with the government. I'll just remain here on my time. All right. Thank you. Ms. Foster? May it please the Court, Sidney Foster for the government. Your Honors, whereas here a plaintiff claims prevailing party status based on a court decision addressing the merits of its claims, the party must show that the court ruled in its favor on the claims here, for example, by ruling that the policy that was challenged was unconstitutional, and in addition must also show that it was awarded some kind of judicial relief as a result, such as an injunction, declaratory judgment, and so forth. There's no dispute that this court's decision fails those, does not have those two critical ingredients. I thought in Waterman we said you didn't necessarily have to prevail on the central issue. You don't necessarily have to prevail on the central issue, but you need to have prevailed on at least one issue, and that is not the case here. Here there were two issues that were – two claims that were asserted. There was a First Amendment claim and an equal protection claim. No court, including this court, though, ever ruled that the challenged governmental policy was unconstitutional on either of those two grounds, and so there can be no question – we don't have a case before us that raises a question about what if you just prevailed with respect to some minor subsidiary issue. So we know that this court's prior decision in this case didn't rule that the underlying policy was unconstitutional. It didn't award any relief. Plaintiffs are, therefore, left with the principle outlined in Waterman that is a very narrow principle that says that a plaintiff can nonetheless be considered to be a prevailing party if a remand order necessarily and inevitably dictates that they will prevail on remand. We respectfully submit that this court's prior decision in this case falls far short of meeting that very demanding standard. This court's prior decision in this case, of course, didn't decide the constitutionality of the underlying policy. To the contrary, it remanded to the district court for it to develop a factual record and for it to decide open issues – issues on the merits of each of plaintiffs' two claims, issues that the court acknowledged had been virtually unbriefed and had not been decided by the district court. I think in these circumstances there can be no question that this court was not – that this court did not think that victory for the plaintiffs was inevitable. Indeed, the plaintiffs' suggestion that victory for them was inevitable is countermount to the contention that this court's prior remand was an act of futility. I think it's inappropriate to interpret this court's decisions to have engaged in such an act of futility. I think there really can be no question this case is quite different from the initiative and referendum case, institute case, that the plaintiffs referenced. In that case, a prior decision of this court had actually ruled that a postal service regulation was unconstitutional, and then it had remanded for further proceedings. This court, when it evaluated the prevailing party question in that case, it held that it was a very close question in that case, but nonetheless that the plaintiffs there were prevailing parties, because on remand, either the postal service was going to need to amend its regulation or it would be ordered to amend its regulation. This is, of course, a very different case that we have here. Here, the prior decision did not rule that the underlying policy was unconstitutional, as was the case in the initiative and referendum institute. Let me ask you about the language in the stipulation of dismissal. You don't think you led the plaintiffs down the garden path when you said, in light of the modifications made following this litigation, plaintiffs intend to seek attorney's fees. Would you read that as just do your best? Well, that is a statement about what plaintiffs were intending to do. It was not a statement about whether the government thought that that was appropriate or not. So, no, I don't think that government, by allowing that to be included in the stipulation, was saying that it agreed that fees might be appropriate here. I think that was a sentence that reflects the view that, in plaintiffs' view, fees were appropriate and that they intended to seek them. I'd just also note one final point, that I think if this Court were to adopt the approach  what plaintiffs are essentially asking this Court to do is to make some predictive judgments about what would have happened on remand if proceedings had continued in the district court. They want this Court to make a predictive judgment about how the facts would have developed, what facts would have been revealed, what interests each side would have asserted with respect to the Pickering balancing analysis, and then how a court would have balanced those interests in light of the underlying factual record. In addition, they want this Court to make predictive judgments about other issues that remained open after this Court's prior decision, including an issue that they ignore in their brief, which is the issue about whether or not plaintiffs would in fact be able to substantiate in summary judgment in trial proceedings that the policy here was indeed coercive. There's just no decision that has ever based a prevailing party determination on such highly contingent predictive judgments. To the contrary, this Court has repeatedly assessed prevailing party status based on what actually happened in a prior proceeding. In cases like Hanrahan, in cases like Thomas, Davis, Inree, long-distance telephone services, all the cases that we've cited in our brief, the Court has analyzed the prevailing party question based on what actually happened, not based on predictions about what might have happened if proceedings had continued. And it would be inappropriate for this Court to engage in this case. It would amount to essentially a second major litigation, which the Supreme Court has warned against doing in Buchanan and other cases. Thank you. Thank you.  Okay. Just briefly, Your Honors. Plaintiffs should just note that the government still does not have any suggestions as to how it could have prevailed on remand. That's because it's clear that they could not have. With respect to their flagging the issue that the argument that the ban doesn't pressure lobbyists to give up their status, in fact, under the Pickering analysis, that's a question of chill, and where plaintiffs under Pickering can show that an adverse action was taken against them, the chill inquiry is simply whether the adverse action was strong enough to chill a non-near-person's speech. And where that adverse action is termination or a blanket ban, as there was here, there's really no question of chill. So we submit that that issue was simply not a question on the remand. With respect to the Postal Service case, it is true that the court ruled that the regulation was unconstitutional, but the court also noted that the Postal Service had available the option to change its enforcement policy specifically to publish a postal bulletin that had suspended enforcement of this regulation. And the government argued quite vehemently to this court that it could have taken that option on remand and prevailed in the litigation. Thus, the government argued in that case that plaintiffs were not prevailing parties. So we submit that, as in that case, there were still open issues, but the court looked at the reality of the situation and saw that the Postal Service ultimately had to amend the regulation. Thank you.
judges: Henderson, Rogers, Ginsburg